UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DANIEL M. OWENS,**

    Petitioner,

v.                                       Case No. 19-CV-1471

**BRIAN FOSTER,**

    Respondent.

---

## DECISION AND ORDER ON
## PETITION FOR WRIT OF HABEAS CORPUS

---

Daniel M. Owens, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Owens was convicted of first-degree reckless homicide, as party to a crime; armed robbery with use of force, as party to a crime; and as being a felon in possession of a firearm, all as a repeater. (Docket # 1 at 1.) Owens was sentenced to fifty-four years of incarceration, consisting of twenty-eight years of initial confinement followed by twenty-six years of extended supervision. (*Id.*) Owens alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Owens was convicted of first-degree reckless homicide and armed robbery with use of force, both as a party to a crime, and possession of a firearm by a felon, stemming from the armed robbery and shooting death of Samuel Harris. (*State v. Owens*, Appeal No. 2017AP660 (Wis. Ct. App. Apr. 5, 2018), Answer, Ex. 5, Docket # 14-5 at ¶¶ 1–2.) According to the criminal complaint, Harris made plans with Owens' associate, Bobby Hogans, to conduct a

drug deal. (*Id.* ¶ 2.) When Harris and Hogans arrived at the apartment building designated for the drug deal, Owens shot Harris. (*Id.*)

Hogans testified that he and Owens initially agreed to sell Harris drugs, but later decided to rob him instead. (Transcript of Jury Trial Sept. 12, 2013 ("Sept. 12 JT Tr."), Answer, Ex. 13, Docket # 14-5 at 83.) Harris, Owens, and Hogans were all armed when they entered the designated apartment building together. (*Id.* at 95, 97, 120, 138.) Owens then pulled out a gun and demanded Harris' money while Hogans struggled to get control of Harris' gun. (*Id.* at 127–28.) Hogans testified that Owens shot Harris during the struggle. (*Id.*)

Hogans' testimony was the primary evidence that Owens was involved in the plan to rob Harris and that Owens shot Harris. (Docket # 14-5 at ¶ 6.) The defense theory of the case was that Hogans, not Owens, shot Harris, and Owens had no part in Hogans' plan to sell Harris drugs or to rob him. (Transcript of Jury Trial Sept. 18, 2013 ("Sept. 18 JT Tr."), 72–74, Answer, Ex. 18, Docket # 14-18.) Defense counsel argued that the jury should be skeptical of Hogans' version of events, as Hogans "[had] the most to lose here," because he had a deal with the State for his testimony against Owens and the evidence showed that Hogans was the one behaving aggressively immediately before the shooting. (*Id.* at 81.) Furthermore, defense counsel argued that based on Hogans' testimony that Owens entered the apartment building first (followed by Harris, and then Hogans), it would have been impossible for Owens to move behind Hogans and Harris, while they struggled over Harris' gun, to shoot Harris in the torso. (*Id.* at 81–87.) Though charged with intentional homicide, Owens was convicted of the lesser-included offense of first-degree reckless homicide as a party to the crime, plus the two remaining counts of armed robbery with use of force as a party to a crime and being a felon in possession of a firearm. (Docket # 14-5 at ¶ 7.)

Owens filed a motion for post-conviction relief, arguing that his trial counsel provided ineffective assistance by failing to thoroughly cross-examine Hogans. (*Id.*) After holding a hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), the trial court denied Owens' motion. (*Id.*) Owens appealed to the Wisconsin Court of Appeals. The court of appeals, citing *Strickland v. Washington*, 466 U.S. 668 (1984) determined that trial counsel was not ineffective with respect to his cross-examination of Hogans. (*Id.* ¶¶ 8–19.) Owens pointed to almost a dozen discrepancies between Hogans' trial testimony and Hogans' prior statements to law enforcement, arguing that counsel failed to highlight these inconsistencies while questioning Hogan. (*Id.* ¶ 13.) The court of appeals rejected Owens' argument, finding that trial counsel *did* take steps to impeach Hogans, impeaching him three times. (*Id.* ¶ 14.) The court also found that the other impeachment materials Owens raised were "neutral at best" and would not have affected the trial's outcome. (*Id.* ¶ 15.)

Furthermore, the court of appeals found that trial counsel's use of impeachment materials supported his trial strategy. For example, Owens pointed to Hogans' inconsistent statements about the order the three men entered into the building where the shooting occurred. At trial, Hogans testified the order was: Owens, Harris, and then Hogans; whereas Hogans previously told law enforcement the order was: Hogans, Harris, and then Owens. (*Id.*) The court of appeals found that trial counsel testified at the *Machner* hearing that he did not raise a stronger challenge to Hogans' trial testimony on this issue, for example, because it was his defense strategy to argue that Hogans was the actual shooter and that Owens could not have possibly been the shooter given the order in which Hogans testified at trial that they entered the building. (*Id.* ¶ 16.) The court of appeals further noted that it would have been pointless for defense counsel to do more because it was apparent to the jury prior to the cross-

examination of Hogans that Hogans lied to the police. During direct examination, the prosecutor had already obtained at least five separate admissions from Hogans that he previously lied to the police during the investigation into Harris' death. (*Id.* ¶ 18.) Thus, the court of appeals concluded that Owens failed to show that trial counsel performed deficiently or that Owens was prejudiced by counsel's performance. (*Id.* ¶ 19.) Thus, the court of appeals affirmed the denial of Owens' motion for post-conviction relief. Owens filed a petition for review with the Wisconsin Supreme Court, which was denied on July 10, 2018. (Answer, Ex. 8, Docket # 14-8.) Owens timely filed a petition for habeas relief in this Court. (Docket # 1.)

## STANDARD OF REVIEW

Owens' petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court

confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Owens alleges that he is entitled to habeas relief based on the ineffective assistance of his trial counsel. Owens alleges that Hogans provided the only direct evidence that Owens was involved in the planning of the robbery and in shooting Harris; thus, the verdict rested solely on the jury's assessment of Hogans' credibility. (Petitioner's Br. at 44, Docket # 1-1 at 28.) While Owens does not claim that trial counsel made *no* attempt to impeach Hogans, he

5

contends that counsel's efforts were "feeble" and "lame," effectively amounting to no impeachment whatsoever. (*Id.* at 38, 41, 43.)

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Owens must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland*'s performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. Judicial scrutiny of counsel's performance is "highly deferential," *id.* at 689, and under AEDPA "we defer to the state court's application of *Strickland* on federal habeas review, meaning that our evaluation of counsel's performance is "doubly deferential,'" *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (internal citation omitted).

Owens has not shown that the court of appeals incorrectly identified the controlling legal standard; indeed, the court of appeals clearly cited *Strickland* in its analysis. Thus, the question on habeas review is whether the court of appeals unreasonably applied those principles to the facts of Owens' case or unreasonably determined the facts in light of the evidence presented. *See Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004).

Owens cannot reasonably challenge that trial counsel called Hogans' credibility into question. First, during the prosecution's direct examination of Hogans, Hogans admitted that he lied to law enforcement multiple times during the course of the investigation, including about Owens' involvement. (Sept. 12 JT Tr. 161–62.) Then, on cross-examination, after Hogans testified regarding the men's entry into the apartment that "Owens went in first, then Harris went in first, then I came in last," defense counsel asked: "So if you would have given a statement to detectives on one of the various times you spoke with them and you said that you went in the building - - apartment building first, would that be true or false?," to which Hogans responded, "That would be false." (Sep. 12 JT Tr. 203.)

The question of Hogans' credibility was clearly important to Owens' defense. In fact, after defense counsel's cross-examination of Hogans, the trial court questioned defense

7

counsel regarding his level of impeachment of Hogans. (Sep. 12 JT Tr. 243–44.) The court wanted to make sure that he was making a "strategic decision" in how he was challenging Hogans (Sep. 12 JT Tr. 243), to which defense counsel assured the court that he had a defense strategy, not that he "forgot" about the lying (Sep. 12 Tr. 244). Both the prosecutor and defense counsel then reminded the trial court about Hogans' testimony on direct that he lied to law enforcement (Sep. 12 JT Tr. 243–44) and defense counsel noted that Hogans had already been "caught in a number of lies as the record exists now" and that he "lik[es] where [he's] at" with the defense (Sep. 12 JT Tr. 244). However, after this exchange with the court, during his re-cross of Hogans, defense counsel elicited two more admissions from Hogans that he lied to law enforcement. (Sep. 12 JT Tr. 247.) Further, defense counsel got Hogans to clearly admit that he "[hadn't] been entirely truthful with law enforcement through this whole process." (*Id.*)

During his closing argument, defense counsel specifically argued to the jury that Hogans had the most to gain by pinning the crime on Owens. (Sept. 18 JT Tr. 78.) Defense counsel countered the prosecutor's argument that Owens lied to police with Hogans' untruthfulness. (*Id.*) Defense counsel then argued how the evidence supported his theory that Hogans was the shooter. (Sept. 18 JT Tr. 78–86.)

While Owens may believe that defense counsel did not impeach Hogans' credibility "good enough," he has not shown that counsel's performance amounted to incompetence under prevailing professional norms. Defense counsel was successful in getting Hogans to testify that he lied to law enforcement. And while Owens was not acquitted of the crimes of which he was charged, he was convicted of the lesser-included offense of first-degree reckless homicide. Owens has not shown that the Wisconsin Court of Appeals' decision was either

contrary to, or an unreasonable application, of *Strickland*, nor has he shown that the court of appeals unreasonably determined the facts in lights of the evidence presented. Owens' request for habeas relief is denied and this case is dismissed.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Owens is not entitled to habeas relief. Thus, I will deny Owens a certificate of appealability. Of course, Owens retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly**.**

9

Dated at Milwaukee, Wisconsin this 17th day of December, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge